AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.    21-354 MB |
| 31241 N. Gecko Trail, | ) |
| San Tan Valley, Arizona | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Arizona _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before *December 27, 2021*
                                              *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.    ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
on duty in the District of Arizona _____ .
                      *(name)*

N/A ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
                               ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  *12·13·2021 @ 8 pm*                        *Judge's signature*

City and state:  Phoenix Arizona                      Michelle H. Burns, U.S. Magistrate Judge
                                                        *Printed name and title*

*AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| *Return* | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name of any person(s) seized: |
|---|
| |

| *Certification* |
|---|

    *I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.*

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

1

## ATTACHMENT A - Residence

## DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS

## TO BE SEARCHED

**PROPERTY:**

The residence located at 31241 N. Gecko Trail, San Tan Valley, Arizona, 85143 is a two story single family residence that is beige in color.  There is a round stone entryway with an iron security door.  The numbers "31241" are affixed horizontally to the left of the three car garage.

**ITEMS:**

Search for all items listed within ATTACHMENT B.

1  **ATTACHMENT B**

2  **ITEMS TO BE SEARCHED AND SEIZED**

3  1.   Images of child pornography and files containing images of child pornography in

4  any form wherever it may be stored or found including:

5       a.   Any computer, computer system  and related peripherals; cellular phones,

6  personal digital assistants, tapes, cassettes, cartridges, streaming tape, commercial software

7  and hardware, computer disks, disk drives, monitors, computer printers, scanners, modems,

8  tape drives, disk applications programs, data disks, system disk operating systems,

9  magnetic media floppy disks, hardware and software operating manuals, tape systems and

10 hard drive and other computer-related operation equipment, firewalls, switches, hubs,

11 wireless access points, gaming consoles, web cameras, uninterrupted power supplies,

12 hardware device power supplies, tape backup drives, digital video recorders, undeveloped

13 photographic film, slides, and other visual depictions of such Graphic Interchange formats

14 (including JPG, GIF, TIP AVI, and MPEG), and any electronic data storage devices

15 including, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, flash memory

16 devices, and other storage mediums; any input/output peripheral devices, including

17 computer passwords and data security devices an computer-related documentation, and any

18 hardware/software manuals related to or used to: visually depict child pornography; contain

19 information pertaining to the interest in child pornography; distribute, receive, or possess

20 child pornography;

21       b.   Books and magazines containing child pornography;

22       c.   Originals, copies, and negatives of visual depictions of child pornography;

23 and

24       d.   Motion pictures, films, videos, and other recordings of visual depictions of

25 child pornography.

26 2.   Information, correspondence, records, documents or other materials pertaining to the

27 possession, receipt or distribution of child pornography, that were transmitted or received

28

1  using computer, some other facility or means of interstate or foreign commerce, common

2  carrier, of the U.S. mail including:

3        a.     Envelopes, letters and other correspondence including electronic mail, chat

4  logs, and electronic messages, establishing possession, access to, or transmission through

5  interstate or foreign commerce, including by U.S. mail or by computer, of child

6  pornography;

7        b.     Books, ledgers and records bearing on the productions, reproduction, receipt,

8  shipment, orders, requests, trades, purchases or transactions of any kind involving the

9  transmission through interstate or foreign commerce, including by U.S. mail or by

10  computer of child pornography;

11        c.     Records, documents, or materials, including any and all address books,

12  mailing lists, supplier lists, mailing address labels, and documents and records pertaining

13  to the preparation, purchase and acquisition of names or lists of names to be used in

14  connections with the purchase, sale, trade or transmission of child pornography, through

15  interstate commerce including by U.S. mail or by computer;

16        d.     Records, documents or materials, including address books, names and lists

17  of names and addresses of minors visually depicted in child pornography;

18        e.     Records of Internet usage, including user names and e-mail addresses and

19  identities assumed for the purposes of communication on the Internet to purchase, sell,

20  trade, transmit or acquire child pornography.  These records may include ISP records, i.e.,

21  billing and subscriber records, chat room logs, e-mail messages and include electronic files

22  in a computer and on other data storage mediums, including CDs or DVDs.

23  3.     Credit card information which evidences ownership or use of the computer

24  equipment found in the above residence, including payment for Internet access and

25  computers or electronic media or other storage devices, disks, CD-ROMS, or similar

26  containers for electronic evidence.

27  4.     Records evidencing occupancy or ownership of the premises described above,

28

1  including utility and telephone bills, mail, envelopes or addressed correspondence.

2  5.      Records or other items which evidence ownership or use of computer equipment

3  found in the above residence, including sales receipts, bills for Internet access and

4  handwritten notes.

5  6.      Any computer hard drive or other electronic media (COMPUTER), physically

6  located at the residence or virtually connected to any computer within the residence, found

7  to contain information otherwise called for by this warrant:

8       a.      Evidence of who used, owned, or controlled the COMPUTER at the time the

9  things described in this warrant were created, edited, or deleted, such as logs, registry

10 entries, saved usernames and passwords, documents, and browsing history;

11      b.      Evidence of software that would allow others to control the COMPUTER,

12 such as viruses, Trojan horses, and other forms of malicious software;

13      c.      Evidence of the lack of such malicious software;

14      d.      Evidence of the attachment to the COMPUTER of other storage devices,

15 disks, CD-ROMS, or similar containers for electronic evidence;

16      e.      Evidence of the times the COMPUTER was used;

17      f.      Passwords, encryption keys, and other access devices that may be necessary

18 to access the COMPUTER.

19 7.      Photographs of Jeffrey Alan Davis' hands.

20 8.      Underwear worn by the child in the videos sent to the undercover TFO – appear to

21 be gray or purple underwear with light blue or white polka dots.

22 9.      Photographs of any child's bedroom including furnishings, bed coverings, and

23 clothing.

24

25

26

27

28

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
31241 N. Gecko Trail,
San Tan Valley, Arizona

)
)
)
)
)

Case No.  21-354 MB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated by reference.

located in the _____ District of _____ Arizona _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Production of Child Pornography |
| 18 U.S.C. § 2252(a)(2) | Distribution of Child Pornography |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:
See attached Affidavit, incorporated by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____ *Brett Day* _____
Reviewed by Brett A. Day, AUSA

_____
*Applicant's signature*

Candace Rose, Special Agent
*Printed name and title*

Sworn to and signed electronically.

Date: 12-13-2021

_____
*Judge's signature*

City and state:  Phoenix, Arizona

Michelle H. Burns, United States Magistrate Judge
*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTACHMENT A - Residence**

**DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS**

**TO BE SEARCHED**

**PROPERTY:**

The residence located at 31241 N. Gecko Trail, San Tan Valley, Arizona, 85143 is a two story single family residence that is beige in color.  There is a round stone entryway with an iron security door.  The numbers "31241" are affixed horizontally to the left of the three car garage.

**ITEMS:**

Search for all items listed within ATTACHMENT B.

1   **ATTACHMENT B**

2   **ITEMS TO BE SEARCHED AND SEIZED**

3   1.   Images of child pornography and files containing images of child pornography in

4   any form wherever it may be stored or found including:

5   a.   Any computer, computer system  and related peripherals; cellular phones,

6   personal digital assistants, tapes, cassettes, cartridges, streaming tape, commercial software

7   and hardware, computer disks, disk drives, monitors, computer printers, scanners, modems,

8   tape drives, disk applications programs, data disks, system disk operating systems,

9   magnetic media floppy disks, hardware and software operating manuals, tape systems and

10   hard drive and other computer-related operation equipment, firewalls, switches, hubs,

11   wireless access points, gaming consoles, web cameras, uninterrupted power supplies,

12   hardware device power supplies, tape backup drives, digital video recorders, undeveloped

13   photographic film, slides, and other visual depictions of such Graphic Interchange formats

14   (including JPG, GIF, TIP AVI, and MPEG), and any electronic data storage devices

15   including, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, flash memory

16   devices, and other storage mediums; any input/output peripheral devices, including

17   computer passwords and data security devices an computer-related documentation, and any

18   hardware/software manuals related to or used to: visually depict child pornography; contain

19   information pertaining to the interest in child pornography; distribute, receive, or possess

20   child pornography;

21   b.   Books and magazines containing child pornography;

22   c.   Originals, copies, and negatives of visual depictions of child pornography;

23   and

24   d.   Motion pictures, films, videos, and other recordings of visual depictions of

25   child pornography.

26   2.   Information, correspondence, records, documents or other materials pertaining to the

27   possession, receipt or distribution of child pornography, that were transmitted or received

28

1    using computer, some other facility or means of interstate or foreign commerce, common

2    carrier, of the U.S. mail including:

3         a.       Envelopes, letters and other correspondence including electronic mail, chat

4    logs, and electronic messages, establishing possession, access to, or transmission through

5    interstate or foreign commerce, including by U.S. mail or by computer, of child

6    pornography;

7         b.       Books, ledgers and records bearing on the productions, reproduction, receipt,

8    shipment, orders, requests, trades, purchases or transactions of any kind involving the

9    transmission through interstate or foreign commerce, including by U.S. mail or by

10    computer of child pornography;

11         c.       Records, documents, or materials, including any and all address books,

12    mailing lists, supplier lists, mailing address labels, and documents and records pertaining

13    to the preparation, purchase and acquisition of names or lists of names to be used in

14    connections with the purchase, sale, trade or transmission of child pornography, through

15    interstate commerce including by U.S. mail or by computer;

16         d.       Records, documents or materials, including address books, names and lists

17    of names and addresses of minors visually depicted in child pornography;

18         e.       Records of Internet usage, including user names and e-mail addresses and

19    identities assumed for the purposes of communication on the Internet to purchase, sell,

20    trade, transmit or acquire child pornography. These records may include ISP records, i.e.,

21    billing and subscriber records, chat room logs, e-mail messages and include electronic files

22    in a computer and on other data storage mediums, including CDs or DVDs.

23    3.      Credit card information which evidences ownership or use of the computer

24    equipment found in the above residence, including payment for Internet access and

25    computers or electronic media or other storage devices, disks, CD-ROMS, or similar

26    containers for electronic evidence.

27    4.      Records evidencing occupancy or ownership of the premises described above,

28

1  including utility and telephone bills, mail, envelopes or addressed correspondence.

2  5.    Records or other items which evidence ownership or use of computer equipment

3  found in the above residence, including sales receipts, bills for Internet access and

4  handwritten notes.

5  6.    Any computer hard drive or other electronic media (COMPUTER), physically

6  located at the residence or virtually connected to any computer within the residence, found

7  to contain information otherwise called for by this warrant:

8      a.     Evidence of who used, owned, or controlled the COMPUTER at the time the

9  things described in this warrant were created, edited, or deleted, such as logs, registry

10  entries, saved usernames and passwords, documents, and browsing history;

11      b.     Evidence of software that would allow others to control the COMPUTER,

12  such as viruses, Trojan horses, and other forms of malicious software;

13      c.     Evidence of the lack of such malicious software;

14      d.     Evidence of the attachment to the COMPUTER of other storage devices,

15  disks, CD-ROMS, or similar containers for electronic evidence;

16      e.     Evidence of the times the COMPUTER was used;

17      f.     Passwords, encryption keys, and other access devices that may be necessary

18  to access the COMPUTER.

19  7.    Photographs of Jeffrey Alan Davis' hands.

20  8.    Underwear worn by the child in the videos sent to the undercover TFO – appear to

21  be gray or purple underwear with light blue or white polka dots.

22  9.    Photographs of any child's bedroom including furnishings, bed coverings, and

23  clothing.

24

25

26

27

28

1    **ELECTRONICALLY SUBMTITED AFFIDAVIT IN SUPPORT**
2    **OF SEARCH WARRANT**
3        I, Candace M. Rose, Special Agent with Federal Bureau of Investigation (FBI), being duly
4    sworn, depose and state as follows, to wit:
5    **INTRODUCTION**
6        The facts of this case, as more fully detailed herein, are that on dates between December 9,
7    2021 and December 13, 2021, a Kik user with a username of "alandavis1661" and display name
8    of "Alan Davis" was a member of a Kik Group (referred to in this affidavit as "Group A").   An
9    undercover Task Force Officer (TFO) with the Metropolitan Police Department-Federal Bureau
10   of Investigation (MPD-FBI) Child Exploitation Task Force was part of this Group and observed
11   members post videos and images that were sexual in nature, with many of them depicting minors.
12   On December 9, 2021, "alandavis1661" initiated a private chat with the undercover TFO.   On
13   December 13, 2021, "alandavis1661" sent several videos to the undercover TFO wherein he was
14   masturbating near and touching a minor female who he states is his five year old daughter.
15   "Alandavis1661" sent the TFO a video where he was holding two fingers up in front of the child
16   to show that he had immediate access to the child.   Investigative steps determined that the Kik
17   account with the username "alandavis1661" was established with an email account
18   "alandavis1488@gmail.com."    Investigative steps also determined that the IP address
19   70.162.61.146 logged into the Kik account multiple times between November 13, 2021 and
20   December 13, 2021.   The IP address 70.162.61.146 is registered to the Cox Communications
21   residential account in the name of Lisa Madrid at 31241 N. Gecko Trail, San Tan Valley, Arizona
22   85143.   Record checks identified that JEFFREY ALAN DAVIS, Lisa's husband, also resides
23   at the house.   Record checks also revealed that JEFFREY ALAN DAVIS has a vehicle co-
24   registered in his name--a 2016 Hyundai Tucson bearing Arizona license plate CTV5927.   Lisa
25   M. Davis is the co-registrant.   Surveillance on December 13, 2021, revealed an individual
26   believed to be JEFFREY ALAN DAVIS loading items into the trunk of a maroon Hyundai sedan
27   bearing California license plate 8VSP705.   This registration on this vehicle resolves to PV
28   Holding Corp., which is believed to be a part of Avis Rental Cars.   I am requesting that the

1   Court issue a warrant to search 31241 N. Gecko Trail, San Tan Valley, Arizona 85143, the person
2   of JEFFREY ALAN DAVIS for digital devices, and the listed two vehicles, for digital devices
3   to locate child pornography and conclusively identify the individual transmitting child
4   pornography.

## PRELIMINARY BACKGROUND INFORMATION

5
6   1.     I am a Special Agent with the FBI assigned to the Phoenix Division.   I have been so
7   employed for eighteen years and I am specifically assigned to conduct investigations pursuant
8   to the FBI's Innocent Images National Initiative (IINI), which focuses on crimes where
9   computers and the Internet are used in the sexual exploitation of children.   I am responsible
10  for conducting federal and international investigations relating to crimes involving the sexual
11  exploitation of children.   I have received basic and on-the-job training in the investigation of
12  cases involving the sexual exploitation of children.   The statements contained in this Affidavit
13  are based on my experience and background as a Special Agent and on information provided
14  by other law enforcement agents.

15  2.     The purpose of this application is to seize evidence, more particularly described in
16  Attachment B, of violations of 18 U.S.C. §§ 2252(a)(2) which makes it a crime to distribute child
17  pornography, violations of 18 U.S.C. §§ 2252(a)(4)(B), which makes it a crime to possess, or
18  knowingly access with intent to view child pornography, and violation of 18 U.S.C. §§ 2251(a)
19  and 2251(e), which makes it a crime to produce child pornography.

20  3.     Because this Affidavit is being submitted for the limited purpose of securing a search
21  warrant, I have not included each and every fact known to me concerning this investigation.   I
22  have set forth only those facts that are necessary to establish probable cause to believe that
23  evidence of violations of 18 U.S.C. §§ 2251 and 2252 is located at 31241 N. Gecko Trail, San
24  Tan Valley, Arizona 85143 ("SUBJECT PREMISES"), more particularly described in
25  Attachment A of the residential search warrant, within a computer and related peripherals and
26  computer media found at the SUBJECT PREMISES; is located on JEFFREY ALAN DAVIS,
27  and any property and personal belongings (including computers and computer media), more
28  particularly described in Attachment A of the person warrant; and is located in the vehicle

1    registered to JEFFREY ALAN DAVIS, a 2016 Hyundai Tucson bearing Arizona license plate
2    CTV5927, and the vehicle in JEFFREY ALAN DAVIS' control, a Hyundai sedan bearing
3    California license plate 8VSP705, and any property and personal belongings (including
4    computers and computer media), more particularly described in Attachment A of the vehicle
5    warrant.

6                                    **DEFINITIONS**

7    4.    The following non-exhaustive list of definitions applies to this Affidavit and Attachments
8    A and B (collectively referred to as "warrant"):

9         a.    "Child Pornography" is any visual depiction of sexually explicit conduct where (a)
10   the production of the visual depiction involved the use of a minor engaged in sexually explicit
11   conduct, (b) the visual depiction is a digital image, computer image, or computer-generated
12   image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct,
13   or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable
14   minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

15        b.    "Child Erotica" means materials or items that are sexually arousing to persons having a
16   sexual interest in minors, but that are not, in and of themselves, obscene or illegal.   In contrast
17   to "child pornography," this material does not necessarily depict minors in sexually explicit
18   poses or positions.   Some of the more common types of child erotica include photographs that
19   are not sexually explicit, drawings, sketches, fantasy writing, and diaries.   See Kenneth V.
20   Lanning, Child Molesters: A Behavioral Analysis (2001) at 65.   Federal courts have recognized
21   the evidentiary value of child erotica and its admissibility in child pornography cases.   See
22   United States v. Cross, 928 F.2d 1030 (11th Cir. 1991) (testimony about persons deriving sexual
23   satisfaction from and collecting non-sexual photographs of children admissible to show intent
24   and explain actions of defendant); United States v. Riccardi, 258 F.Supp.2d 1212 (D. Kan., 2003)
25   (child erotica admissible under Federal Rule of Evidence 404(b) to show knowledge or intent).

26        c.    "Visual depictions" include undeveloped film and videotape, and data stored on
27   computer disk or by electronic means, which is capable of conversion into a visual image.   See
28   18 U.S.C. § 2256(5).

d.  "Minor" means any person under the age of eighteen years.  See 18 U.S.C. § 2256(1).

e.  "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.  See 18 U.S.C. § 2256(2).

f.  "Computer" means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  See 18 U.S.C. § 1030(e)(1).

g.  "Computer hardware" consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including  central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices), peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

h.  "Computer software" is digital information which can be interpreted by a computer and any of its related components to direct the way they work.  Computer software is stored in electronic, magnetic or other digital form.  It commonly includes programs to run operating systems, applications and utilities.

i.  "Computer-related documentation" consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software or other related items.

j.  "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation or data.  Data security devices may consist of hardware, software or other programming code.  A password (a string

of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

k. "Internet Service Providers" (ISPs) are commercial organizations, which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage and co-location of computers and other communications equipment. ISPs can offer various means to access the Internet, including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports. Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox and the subscriber typically creates a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password.

l. "ISP Records" are records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.

m. "Internet Protocol address" (IP address) refers to a unique number used by a computer

1   to access the Internet.   IP addresses can be dynamic, meaning that the Internet Service Provider
2   (ISP) assigns a different unique number to a computer every time it accesses the Internet.   IP
3   addresses might also be static, if an ISP assigns a user's computer a particular IP address which
4   is used each time the computer accesses the Internet.
5        n.   The terms "records," "documents" and "materials" include all information recorded in
6   any form, visual or aural, and by any means, whether in hand-made form (including writings,
7   drawings, painting), photographic form (including microfilm, microfiche, prints, slides,
8   negatives, videotapes, motion pictures, photocopies), mechanical form (including phonograph
9   records, printing, typing) or electrical, electronic or magnetic form (including tape recordings,
10  cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard
11  disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media
12  Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators,
13  electronic dialers or electronic notebooks, as well as digital data files and printouts or readouts
14  from any magnetic, electrical or electronic storage device).
15       o.   "Digital device" includes any electronic system or device capable of storing and/or
16  processing data in digital form, including the following: central processing units; laptop or
17  notebook computers; PDAs; wireless communication devices such as telephone paging devices,
18  beepers and mobile telephones; peripheral input/output devices such as keyboards, printers,
19  scanners, plotters, monitors and drives intended for removable media; related communications
20  devices such as modems, cables and connections; storage media such as hard disk drives, floppy
21  disks, compact disks, magnetic tapes and memory chips; and security devices.
22       p.   "Image" or "copy" refers to an accurate reproduction of information contained on an
23  original physical item, independent of the electronic storage device.   "Imaging" or "copying"
24  maintains contents, but attributes may change during the reproduction.
25       q.   "Hash value" refers to a mathematical algorithm generated against data to produce a
26  numeric value that is representative of that data.   A hash value may be run on media to find the
27  precise data from which the value was generated.   Hash values cannot be used to find other data.
28       r.   "Steganography" refers to the art and science of communicating in a way that hides the

1  existence of the communication. It is used to hide a file inside another. For example, a child
2  pornography image can be hidden inside another graphic image file, audio file or other file
3  format.

4      s.  "Compressed file" refers to a file that has been reduced in size through a compression
5  algorithm to save disk space. The act of compressing a file will make it unreadable to most
6  programs until the file is uncompressed.

7      t.  "Domain Name" refers to the common, easy to remember names associated with an
8  Internet Protocol address.   For example, a domain name of www.usdoj.gov refers to the Internet
9  Protocol address of 149.101.1.32.   Domain names are typically strings of alphanumeric
10  characters with each level delimited by a period.   Each level, read backwards - from right to
11  left- further identifies parts of an organization.   Examples of first level or top-level domains are
12  typically .com for commercial organizations, .gov for the governmental organizations, .org for
13  organizations, and .edu for educational organizations.   Second level names will further identify
14  the organization.   For example, usdoj.gov further identifies the United States governmental
15  agency to be the Department of Justice.   Additional levels may exist as needed until each
16  machine is uniquely identifiable.   For example, www.usdoj.gov identifies the world wide web
17  server located at the United States Department of Justice, which is part of the United States
18  government.

19      u.  "Log Files" are records automatically produced by computer programs to document
20  electronic events that occur on computers.   Computer programs can record a wide range of
21  events including remote access, file transfers, logon/logoff times, and system errors.   Logs are
22  often named based on the types of information they contain.   For example, web logs contain
23  specific information about when a website was accessed by remote computers; access logs list
24  specific information about when a computer was accessed from a remote location; and file
25  transfer logs list detailed information concerning files that are remotely transferred.

26      v.  "Hyperlink" refers to an item on a web page which, when selected, transfers the user
27  directly to another location in a hypertext document or to some other web page.

28      w.  "Website" consists of textual pages of information and associated graphic images.   The

1   textual information is stored in a specific format known as Hyper-Text Mark-up Language
2   (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport
3   Protocol (HTTP).

4       x.  "Uniform Resource Locator" or "Universal Resource Locator" or "URL" is the unique
5   address for a file that is accessible on the Internet.   For example, a common way to get to a
6   website is to enter the URL of the website's home page file in the Web browser's address line.
7   Additionally, any file within that website can be specified with a URL.   The URL contains the
8   name of the protocol to be used to access the file resource, a domain name that identifies a
9   specific computer on the Internet, and a pathname, a hierarchical description that specifies the
10   location of a file in that computer.

11   ## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY
12   ## AND ONLINE CHILD EXPLOITATION

13   5.   Based upon my knowledge, training and experience in online child exploitation and child
14   pornography investigations, as well as the experience and training of other law enforcement
15   officers with whom I have had discussions, I have learned the following:

16       a.  Computers and computer technology have revolutionized the way in which child
17   pornography is produced, distributed, stored and communicated as a commodity and a further
18   tool of online child exploitation.

19       b.  Individuals can transfer photographs from a camera onto a computer-readable format
20   with a variety of devices, including scanners, memory card readers, or directly from digital
21   cameras.

22       c.  Modems allow computers to connect to another computer through the use of telephone,
23   cable, or wireless connection.   Electronic contact can be made to literally millions of computers
24   around the world.

25       d.  The capability of a computer to store images in digital form makes the computer itself
26   an ideal repository for child pornography.   As explained further below, the storage capacity of
27   electronic media used in home computers has increased tremendously within the last several
28   years.   These drives can store extreme amounts of visual images at very high resolution.

1    e.  The Internet, the World Wide Web and other Internet components afford individuals

2    many different and relatively secure and anonymous venues for obtaining, viewing and trading

3    child pornography or for communicating with others to do so or to entice children. f.

4          Individuals can use online resources to retrieve, store and share child pornography,

5    including services offered by Internet Portals such as Google, America Online (AOL), Yahoo!

6    and Hotmail, among others.   Online services allow a user to set up an account providing e-mail

7    and instant messaging services, as well as electronic storage of computer files in any variety of

8    formats.   A user can set up an online storage account from any computer with access to the

9    Internet.   Evidence of such online storage of child pornography is often found on the user's

10   computer.   And even in cases where online storage is used, evidence of child pornography can

11   be found on the user's computer in most cases.

12         g.  As is the case with most digital technology, computer communications can be saved or

13   stored on hardware and computer storage media used for these purposes.   Storing this

14   information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the

15   location of one's favorite websites in, for example, "bookmarked" files.   However, digital

16   information can also be retained unintentionally, e.g., traces of the path of an electronic

17   communication may be automatically stored in many places (e.g., temporary files or ISP client

18   software, among others).   In addition to electronic communications, a computer user's Internet

19   activities generally leave traces or "footprints" in the web cache and history files of the browser

20   used.   Such information is often maintained for very long periods of time until overwritten by

21   other data.

22         h.  The interaction between software applications and the computer operating systems often

23   results in material obtained from the Internet being stored multiple times, and even in different

24   locations, on a computer hard drive without the user's knowledge.   Even if the computer user is

25   sophisticated and understands this automatic storage of information on his/her computer's hard

26   drive, attempts at deleting the material often fail because the material may be automatically

27   stored multiple times and in multiple locations within the computer media.   As a result, digital

28   data that may have evidentiary value to this investigation could exist in the user's computer

1    media despite, and long after, attempts at deleting it.    A thorough search of this media could

2    uncover evidence of receipt, distribution and possession of child pornography.

3        i.    Data that exists on a computer is particularly resilient to deletion.    Computer files or

4    remnants of such files can be recovered months or even years after they have been downloaded

5    onto a hard drive, deleted or viewed via the Internet.    Electronic files downloaded to a hard

6    drive can be stored for years at little to no cost.    Even when such files have been deleted, they

7    can be recovered months or years later using readily-available forensic tools.    When a person

8    "deletes" a file on a home computer, the data contained in the file does not actually disappear,

9    rather, the data remains on the hard drive until it is overwritten by new data.    Therefore, deleted

10    files or remnants of deleted files, may reside in free space or slack space – that is, in space on

11    the hard drive that is not allocated to an active file or that is unused after a file has been allocated

12    to a set block of storage space for long periods of time before they are overwritten.    In addition,

13    a computer's operating system may also keep a record of deleted data in a "swap" or "recovery"

14    file.    Similarly, files that have been viewed via the Internet are automatically downloaded into

15    a temporary Internet directory or cache.    The browser typically maintains a fixed amount of

16    hard drive space devoted to these files, and the files are only overwritten as they are replaced

17    with more recently viewed Internet pages.    Thus, the ability to retrieve residue of an electronic

18    file from a hard drive depends less on when the file was downloaded or viewed and more on a

19    particular user's operating system, storage capacity, and computer habits.

20        **BACKGROUND ON CELLULAR PHONE AND CHILD PORNOGRAPHY**

21        **AND ONLINE CHILD EXPLOITATION**

22    6.    Based upon my knowledge, training and experience in online child exploitation and child

23    pornography investigations, as well as the experience and training of other law enforcement

24    officers with whom I have had discussions, I have learned the following:

25        a.    Cellular telephones have revolutionized the way in which child pornography is

26    produced, distributed, stored and communicated as a commodity and a further tool of online

27    child exploitation.

28        b.    A cellular telephone is a handheld wireless device used for voice and data

communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

c.   The capability of a cellular telephone to store images in digital form makes the cellular telephone itself an ideal repository for child pornography.   As explained further below, the storage capacity of electronic media used in home cellular telephones has increased tremendously within the last several years.   These drives can store extreme amounts of visual images at very high resolution.

d.   The Internet, the World Wide Web and other Internet components afford individuals many different and relatively secure and anonymous venues for obtaining, viewing and trading child pornography or for communicating with others to do so or to entice children.

e.   Individuals can use online resources to retrieve, store and share child pornography, including services offered by Internet Portals such as Google, America Online (AOL), Yahoo! and Hotmail, among others.   Online services allow a user to set up an account providing e-mail and instant messaging services, as well as electronic storage of cellular telephone files in any variety of formats.   A user can set up an online storage account from any cellular telephone with access to the Internet.   Evidence of such online storage of child pornography is often found on the user's cellular telephone.   And even in cases where online storage is used, evidence of child pornography can be found on the user's cellular telephone in most cases.

f.   The interaction between software applications and the cellular telephone operating

1  systems often results in material obtained from the Internet being stored multiple times, and even
2  in different locations, on a cellular telephone hard drive without the user's knowledge.   Even if
3  the cellular telephone user is sophisticated and understands this automatic storage of information
4  on his/her cellular telephone's storage, attempts at deleting the material often fail because the
5  material may be automatically stored multiple times and in multiple locations within the cellular
6  telephone media.   As a result, digital data that may have evidentiary value to this investigation
7  could exist in the user's cellular telephone media despite, and long after, attempts at deleting it.
8  A thorough search of this media could uncover evidence of receipt, distribution and possession
9  of child pornography.

10  **BACKGROUND ON KIK MESSENGER**

11  7.   Kik Messenger ("Kik") is an instant messaging application for mobile devices. The
12  application is available on most iOS, Android, and Windows phone operating systems free of
13  charge.   Kik uses a smartphone's data plan or Wi-Fi to transmit and receive messages.   Kik
14  allows users to share photographs, sketches, mobile web-pages, linked internet files and other
15  content.

16  8.   Kik subscribers obtain an account by registering with Kik.   During the registration process,
17  Kik asks subscribers to provide basic personal information and to select a username.   During
18  this process, Kik registers date, time, internet protocol (IP) address and device related
19  information.   The username is the only unique identifier used by Kik.   According to the Kik
20  Law Enforcement Guide, a Kik username is unique, can never be replicated and can never be
21  changed.

22  **BACKGROUND ON COMPUTERS AND EVIDENCE ASSESSMENT PROCESS IN**
23  **CHILD PORNOGRAPHY AND CHILD EXPLOITATION**
24  **INVESTIGATIONS**

25  9.    Based upon my knowledge, training, and experience, as well as information related to me
26  by agents and others involved in the forensic examination of digital devices, I know that
27  segregating information before commencement of the review of digital evidence by the
28  examining agent is inconsistent with the evidence assessment process in child pornography and

1    online child exploitation investigations.   This is true in part because the items to be searched

2    will not only contain child pornography but also will contain the identity of the user/possessor

3    of the child pornography as well as evidence as to the programs and software used to obtain the

4    child pornography, which may be located throughout the areas to be searched.

5           a.      As further described in Attachment A, this warrant seeks permission to locate not

6    only computer files that might serve as direct evidence of the crimes described in the warrant,

7    but also for evidence that establishes how computers were used, the purpose of their use, and

8    who used them.   Additionally, the warrant seeks information about the possible location of other

9    evidence.

10          b.      As described above and in Attachment A, this application seeks permission to search

11   and seize certain records that might be found in the SUBJECT PREMISES, in whatever form

12   they are found.   One form in which the records might be found is stored on a computer's hard

13   drive, or other electronic media.   Some of these electronic records might take the form of files,

14   documents, and other data that is user-generated.   Some of these electronic records, as explained

15   below, might take a form that becomes meaningful only upon forensic analysis.

16          c.      Although some of the records called for by this affidavit might be found in the form

17   of user-generated documents (such as word processor, picture and movie files), computer hard

18   drives can contain other forms of electronic evidence that are not user-generated.   In particular,

19   a computer hard drive may contain records of how a computer has been used, the purposes for

20   which it was used and who has used these records, as described further in the attachments.   For

21   instance, based upon my knowledge, training and experience, as well as information related to

22   me by agents and others involved in the forensic examination of digital devices, I know the

23   following:

24                  i.   Data on the hard drive not currently associated with any file can provide

25                       evidence of a file that was once on the hard drive but has since been deleted

26                       or edited, or of a deleted portion of a file (such as a paragraph that has been

27                       deleted from a word processing file).

28                  ii.   Virtual memory paging systems can leave traces of information on the

1     hard drive that show what tasks and processes the computer were recently in

2     use.

3     iii.    Web browsers, e-mail programs and chat programs store configuration

4     information on the hard drive that can reveal information such as online

5     nicknames and passwords.

6     iv.    Operating systems can record additional information, such as the

7     attachment of peripherals, the attachment of USB flash storage devices and

8     the times the computer was in use.

9     v.   Computer file systems can record information about the dates files were

10     created and the sequence in which they were created.   This information may

11     be evidence of a crime or indicate the existence and location of evidence in

12     other locations on the hard drive.

13     d.  Further, in finding evidence of how a computer has been used, the purposes for

14 which it was used and who has used it, sometimes it is necessary to establish that a

15 particular thing is not present on a hard drive or that a particular person (in the case of a

16 multi-user computer) was not a user of the computer during the time(s) of the criminal

17 activity.  For instance, based upon my knowledge, training and experience, as well as

18 information related to me by agents and others involved in the forensic examination of

19 digital devices, I know that when a computer has more than one user, files can contain

20 information indicating the dates and times that files were created as well as the sequence

21 in which they were created, and, for example, by reviewing the Index.dat files (a system

22 file that keeps track of historical activity conducted in the Internet Explorer application),

23 whether a user accessed other information close in time to the file creation dates, times

24 and sequences so as to establish user identity and exclude others from computer usage

25 during times related to the criminal activity.

26     e.  Evidence of how a digital device has been used, what it has been used for and who has

27 used it, may be the absence of particular data on a digital device and requires analysis of the

28 digital device as a whole to demonstrate the absence of particular data.   Evidence of the absence

1   of particular data on a digital device is not segregable from the digital device.

2       f.   The types of evidence described above may be direct evidence of a crime, indirect

3   evidence of a crime indicating the location of evidence or a space where evidence was once

4   located, contextual evidence identifying a computer user and contextual evidence excluding a

5   computer user.   All of these types of evidence may indicate ownership, knowledge and intent.

6

7       g.   This type of evidence is not "data" that can be segregated, that is, this type of data cannot

8   be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to

9   investigators.   Rather, evidence of this type is a conclusion, based on a review of all available

10   facts and the application of knowledge about how a computer behaves and how computers are

11   used.   Therefore, contextual information is necessary to understand the evidence described in

12   Attachment A also falls within the scope of the warrant.

13                    **SEARCH METHODOLOGY TO BE EMPLOYED**

14   10.   As noted within this search warrant, it would be extremely difficult, if not impossible to

15   conduct a thorough on-site review of all of the potential evidence in this case.   Given these

16   constraints, the search methodology to be employed is as follows:

17       a.   All computers, computer hardware and any form of electronic storage that could contain

18   evidence described in this warrant will be seized for an off-site search for evidence that is

19   described in the attachments of this warrant. It is anticipated that mirror copies or images of such

20   evidence will be made if the failure to do so could otherwise potentially alter the original

21   evidence.

22       b.   Consistent with the information provided within this affidavit, contextual information

23   necessary to understand the evidence, to identify the user/possessor of the child pornography,

24   and to establish admissibility of the evidence in subsequent legal proceedings will also be sought

25   by investigative agents.

26       c.   Additional techniques to be employed in analyzing the seized items will include (1)

27   surveying various file directories and the individual files they contain; (2) opening files to

28   determine their contents; (3) scanning storage areas, (4) performing key word searches through

1    all electronic storage areas to determine whether occurrences of language contained in such
2    storage areas exist that are likely to appear in the evidence described in this affidavit and its
3    attachments, and (5) performing any other data analysis techniques that may be necessary to
4    locate and retrieve the evidence described in this affidavit and its attachments.

5    11.   Because it is expected that the computers, computer hardware and any form of electronic
6    storage media may constitute (1) instrumentality of the offense, (2) fruit of criminal activity, (3)
7    contraband, or (4) evidence otherwise unlawfully possessed, it is anticipated that such evidence
8    will not be returned to the owner and that it will be either forfeited or ultimately destroyed in
9    accordance with the law at the conclusion of the case.

10        a.   Because of the large storage capacity as well as the possibility of hidden data within the
11   computers, computer hardware and any form of electronic storage media, it is anticipated that
12   there will be no way to ensure that contraband-free evidence could be returned to the
13   user/possessor of the computer, computer hardware or any form of electronic storage media,
14   without first wiping such evidence clean. Wiping the original evidence clean would mean that
15   the original evidence would be destroyed and thus, would be detrimental to the investigation and
16   prosecution of this case.

17        b.   Further, because investigators cannot anticipate all potential defenses to the offenses in
18   this affidavit, and as such, cannot anticipate the significance of the evidence that has been
19   lawfully seized pursuant to this warrant, it is requested that all seized evidence be retained by
20   law enforcement until the conclusion of legal proceedings or until other order of the court.

21        c.   If after careful inspection investigators determine that such computers, computer
22   hardware and electronic storage media do not contain (1) instrumentality of the offense, (2) fruit
23   of criminal activity, (3) contraband, (4) evidence otherwise unlawfully possessed, or (5) evidence
24   of the person who committed the offense and under what circumstances the offense was
25   committed, then such items seized will be returned.

26   **CHARACTERISTICS OF INDIVIDUALS INVOLVED IN THE DISTRIBUTION OF**
27   **CHILD PORNOGRAPHY**

28   12.   Based upon my knowledge, experience, and training in child pornography investigations,

and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals involved in the possession and distribution of child pornography. Those who possess and distribute child pornography:

a. May receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. May collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Such individuals oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. May possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. These individuals typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. May maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly.

e. May correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who

1   share the same interests in child pornography.

2      f.  May prefer not to be without their child pornography for any prolonged time period.

3   This behavior has been documented by law enforcement officers involved in the investigation

4   of child pornography throughout the world.

5                              **DETAILS OF THE INVESTIGATION**

6   13.  Between December 9, 2021 and December 13, 2021, an undercover Task Force Officer

7   (TFO) with the Metropolitan Police Department-Federal Bureau of Investigation (MPD-FBI) in

8   Washington D.C., Child Exploitation Task Force was part of a Kik messenger chat group

9   hereinafter referred to as Group A.   [The actual name of the group is known to your affiant, but

10  is being redacted in order to protect other ongoing investigations].   Group A was comprised of

11  members who appeared to have a sexual interest in children, particularly their daughters, and/or

12  child pornography.   Participants in this chat group shared images and videos that contained

13  child erotica and other child exploitative material.

14  14.  An individual utilizing the Kik username "alandavis1661" with a display name of "Alan

15  Davis" was a member of Group A.

16  15.  On approximately December 9, 2021, "alandavis1661" sent a private message to the

17  undercover TFO.   The user asked, "How old is your lil one" and stated his were 15 and 5.   User

18  "alandavis1661" stated he was currently in her room while she was at school and was "stroking."

19  He then sent a video which showed what appeared to be a young girl's bedroom, which contained

20  a dollhouse a bed comforter with a pink princess, and a doll.   An adult male was masturbating

21  his penis in the video.   The video appeared to be taken by the adult male who was masturbating.

22  16.  The undercover TFO sent a few images of his purported 8 year-old daughter during the

23  course of the chat conversation when requested by "alandavis1661".   [The images sent by the

24  undercover TFO did not depict a real child].

25  17.  On December 13, 2021, "alandavis1661" sent another video to the undercover TFO which

26  depicted a female child wearing a long-sleeve shirt and underwear, and she was lying in bed and

27  moving.   An adult male hand touches her abdominal area.   "Alandavis1661" said he had just

28  taken the video.   The time stamp of the chat would have been 6:59 a.m., Arizona Time.

1   Approximately one minute later, "alandavis1661" sent another video of an adult male
2   masturbating his penis right near the girl.   The girl is wearing the same clothing, and the bed
3   comforter matches the one described in paragraph 15.   Neither video showed the girl's face or
4   the man's face.   The girl appeared to be consistent with a five-year-old.

5   18.   After receiving these two videos, the undercover TFO requested "alandavis1661" send a
6   video holding up two fingers in front of the child to prove he really has access to her.   Kik user
7   "alandavis1661" responded with a video holding up two fingers and touching the leg of the same
8   girl dressed in the same clothes, who is still in bed.   He then asks the TFO to send a picture of
9   his daughter's ass live.

10   19.   The Kik user "alandavis1661" told the TFO that he can do whatever he wants for him
11   because he has her with him and indicated that he doesn't save his daughter's videos and only
12   does them live.   [Note:  In the Kik context, doing a video "live" means that the user is taking
13   the video real-time via the Kik app, but the video will not save to his gallery.]   At approximately
14   7:20 a.m., "alandavis1661" stated that he needs to get her up now.   A minute later, he send a
15   video of an adult male masturbating near the same girl, and then the male touches the child's
16   buttocks.   She is still wearing the same shirt and underwear in this video.

17   20.   On December 13, 2021, at approximately 7:23 a.m. Arizona Time, "alandavis1661" sent
18   another video to the undercover TFO.   In this video, the adult male is lying next to the same girl
19   with the man behind the girl as they lay on their sides.   His erect penis is pulled out of his shorts
20   and is touching her buttocks area.   He pushes his penis and body against her and she moves.
21   The child is wearing the same underwear in the video.   In this video, neither the girl's face, nor
22   the man's face is visible.   The girl looks consistent with a five-year-old girl.

23   21.   During the chat, "alandavis1661" states that he is on Pacific time zone.   He also sent a
24   picture of an adult female engaged in a sex act, who he stated was his wife, and a picture of a
25   girl dressed in a cheerleading or dance costume and stated it was his 15-year-old.   The woman's
26   face was only partially visible and could not be identified.

27   22.   On December 13, 2021, an emergency disclosure requested was served on Kik requesting
28   subscriber information and IP history for the username "alandavis1661".   On December 13,

1  2021, Kik provided data responsive to the request. The Kik account with the username
2  "alandavis1661" and display name "Alan Davis" was registered with the email address
3  alandavis1488@gmail.com and provided a device description of an iPhone. IP Addresses
4  between November 13, 2021 and December 13, 2021 were provided by Kik. A review of the
5  IP Addresses showed that several of the IP Addresses were mobile or from IP Address
6  70.162.61.146, which resolved to Cox Communications.

7  23.   On December 13, 2021, an emergency disclosure request was served on Cox
8  Communication requesting subscriber information for the IP Address 70.162.61.146. They
9  responded with the subscriber of Lisa Madrid, with service address 31241 N. Gecko Trail, San
10  Tan Valley, AZ 85143.

11  24.   On December 13, 2021, an emergency disclosure request was served on Verizon for the IP
12  Address 174.205.241.91, which was associated with the Kik account "alandavis1661" on
13  December 13, 2021 at 14:58:51 UTC. Verizon responded to the request and identified the
14  associated number of (623)533-1637. They provided subscriber information to this phone
15  number, which is in the name of JEFFREY A. DAVIS as SUBJECT PREMISES.

16  25.   Motor Vehicle Department records showed that JEFFREY ALAN DAVIS and Lisa M.
17  Davis (former names Lisa M. Hassebrook and Lisa M. Madrid) list their address and have
18  vehicles registered to 31241 N. Gecko Trail, San Tan Valley, AZ 85143. Specifically,
19  JEFFREY ALAN DAVIS has a 2016 Hyundai Tucson, bearing AZ license plate CTV5927 co-
20  registered in his name Lisa M. Davis' name at this address.

21  26.   On December 13, 2021, at approximately 11:45 a.m., surveillance was conducted at
22  SUBJECT PREMISES. A maroon colored Hyundai sedan, bearing California license plate
23  8VSP705 was parked in the driveway. An adult male, believed to be JEFFREY ALAN DAVIS
24  was loading bags and items into the trunk of the vehicle and then left the residence. A check of
25  the license plate revealed that it is registered to a 2021 Hyundai with a registered owner of P V
26  Holding Corp., 5721 W. 96th Street, Los Angeles, CA 90045. It is believed that P V Holding
27  Corp., is part of Avis Rental Cars.

28  27.   A search of Pinal County Assessor records shows that JEFFREY A. and LISA M. DAVIS

1  are the current owners of 31241 N. Gecko Trail, San Tan Valley, AZ 85143.

2  28.   A search of Facebook located accounts belonging to "Lisa Hassebrook Davis and "Jeff

3  Davis".   On December 5, 2021, there are photos of the two of them with "their" little girl, at

4  what appears to be her 5th birthday party.

5  **FORFEITURE**

6  29.   For Chapter 110 child pornography offenses, 18 U.S.C. §§ 2253 and 2254 provide the

7  forfeiture authority. Section 2254 provides for civil forfeiture of the same property subject to

8  criminal forfeiture in Section 2253, as requested in a criminal seizure warrant pursuant to 21

9  U.S.C. § 853(f).

10  30.   Section 2253 provides, in relevant part:

11      (a) Property subject to criminal forfeiture -

12         (1) any visual depiction described in section 2251, 2251A, or 2252, 2252A,

13         2252B, or 2260 of this chapter, or any book, magazine, periodical, film,

14         videotape, or other matter which contains any such visual depiction, which

15         was produced, transported, mailed, shipped or received in violation of this

16         chapter;

17         (2) any property, real or personal, constituting or traceable to gross profits

18         or other proceeds obtained from such offense, and;

19         (3) any property, real or personal, used or intended to be used to commit or

20         to promote the commission of such offense or any property traceable to such

21         property.

22  31.   Pursuant to these Rules, I request immediate forfeiture of any property, including items of

23  electronic evidence, which constitutes, contains, or was used to facilitate a crime involving child

24  pornography or online child exploitation.

25  **CONCLUSION**

26  32.   Based on the foregoing, there is probable cause to believe that JEFFREY ALAN DAVIS,

27  or another person located at the SUBJECT PREMISES, is utilizing or has utilized the Kik

28  username "alandavis1661" in violation of Title 18 U.S.C. § 2251 and 2252, which, among other

things, makes it a federal crime for any person to distribute, possess, or produce child pornography, and that the property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are located at the SUBJECT PREMISES, as more fully described in Attachments A.

Respectfully submitted,

Candace M. Rose
Special Agent
Federal Bureau of Investigation

Sworn and subscribed electronically this 13th day of December, 2021.

HONORABLE MICHELLE H. BURNS
United States Magistrate Judge